UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PHILLIP SIMS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

AT&T MOBILITY SERVICES LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,

Defendants.

No. 2:12-cv-02702-JAM-AC

**ORDER GRANTING DEFENDANT'S REQUEST TO STAY**

Pending before the Court are Plaintiff Phillip Sims's ("Plaintiff") Motion to Remand and for Attorneys' Fees and Costs (Doc. #8) and Defendant AT&T Mobility Services LLC's ("Defendant") Motion to Dismiss Plaintiff's Seventh and Eighth Claims (Doc. #6).[1] Both motions are fully briefed.

I. BACKGROUND

This lawsuit was originally filed in San Joaquin County

[1] The motions were determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing for both motions was originally scheduled for January 23, 2013.

Superior Court. Defendant then removed the action pursuant to 28 U.S.C. § 1453 claiming federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Defendant alleges that CAFA's jurisdictional requirements are met because more than $5,000,000 is in controversy and minimal diversity of citizenship exists between the parties. After removing the action, Defendant moved to dismiss Plaintiff's seventh and eighth claims and strike Plaintiff's claim for punitive damages. Plaintiff then moved to remand this action to state court because he contests the Court's subject matter jurisdiction over this action.

The substantive claims raised by Plaintiff relate to his former employment with Defendant. Plaintiff was a Retail Store Manager ("RSM") for one of Defendant's retail locations. Plaintiff alleges that his position was unlawfully classified as exempt from state overtime and break period laws. Plaintiff accordingly seeks unpaid wages as well as other penalties allegedly due under California law.

## II. OPINION

Plaintiff's Motion to Remand will be addressed first because if the Court lacks subject matter jurisdiction, the action must be remanded to state court without reaching the merits of Defendant's motion to dismiss.

### A. Subject Matter Jurisdiction

#### 1. Legal Standard

Federal district courts have subject matter jurisdiction over class actions in which (1) the amount in controversy exceeds

$5,000,000, (2) there exists at least minimal diversity of citizenship between the parties, and (3) the class consists of at least 100 members. CAFA, 28 U.S.C. §§ 1332(d)(2), 1332(d)(5). A defendant may remove such an action from state to federal court. 28 U.S.C. § 1441(a).

When a defendant removes a class action from state court pursuant to CAFA, it bears the burden of showing jurisdiction. Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994, 997 (9th Cir. 2007) (citing Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 685 (9th Cir.2006) (per curiam)). When a plaintiff specifically pleads an amount in controversy that is less than the $5,000,000 jurisdictional threshold, the removing defendant must "contradict the plaintiff's own assessment of damages, [and] overcome the presumption against federal jurisdiction" by showing with legal certainty that the amount in controversy exceeds the statutory threshold. Id. at 999-1000. If a plaintiff pleads an amount in controversy greater than the jurisdictional threshold, remand is only proper when it is shown to a legal certainty that the threshold is not actually met. Id. at 998. Finally, where no amount in controversy is pled, a removing defendant need only show that the amount is sufficient by a preponderance of the evidence. Id.

The legal certainty standard requires that the Defendant provide enough "concrete evidence . . . to estimate" the actual amount in controversy. Id. at 1000. "The 'legal certainty' standard sets a high bar for the party seeking removal, but it is not insurmountable." Id.

2. Discussion

Plaintiff seeks remand on the grounds that Defendant has not shown to a legal certainty that the jurisdictional amount in controversy requirement is satisfied. Plaintiff argues that the legal certainty standard applies because the Complaint specifically alleges that the amount in controversy is less than $5,000,000. In order to rebut Defendant's evidence concerning the amount in controversy, Plaintiff argues that the class size estimated by Defendant is over-inclusive and that Defendant's other damages calculations are supported by insufficient evidence. Plaintiff also argues that he waived recovery beyond $5,000,000 (the "CAFA waiver"), which defeats federal jurisdiction. Defendant responds to Plaintiff's arguments in two ways. First, Defendant argues that Plaintiff cannot waive recovery beyond $5,000,000 in order to avoid federal jurisdiction. Defendant also argues that the Complaint does not plead an amount in controversy less than $5,000,000, but instead pleads a waiver of any recovery beyond that amount. Second, Defendant alternately argues that it has shown that the amount in controversy exceeds the $5,000,000 threshold. Defendant must first show that the $5,000,000 threshold is met before the validity of the CAFA waiver affects jurisdiction, so the Court will address the amount in controversy first.

a. Amount in Controversy

Plaintiff argues that Defendant failed to show to a legal certainty that the $5,000,000 threshold is met in this case. Plaintiff points to the Notice of Removal and claims that it is not supported by evidence sufficient to show subject matter

jurisdiction under the legal certainty standard. Defendant responds that the legal certainty standard does not apply in this case because Plaintiff never pled an amount in controversy in his complaint. Defendant argues that Plaintiff only pled a waiver of damages over $5,000,000, but not that the amount in controversy is less than $5,000,000. Defendant adds that Plaintiff's waiver of damages beyond $5,000,000 was made in bad faith because the validity of such waivers is currently pending before the Supreme Court. Defendant therefore takes the position that it must only show that the threshold is met by a preponderance of the evidence, not that it is met to a legal certainty.

The Court disagrees with Defendant's characterization of the complaint. Plaintiff pleads at paragraph 10 of his complaint, "[T]he aggregate amount in controversy is less than five million dollars ($5,000,000). Plaintiff further waives seeking more than five million dollars ($5,000,000) regarding the aggregate amount in controversy for the class claims alleged herein." Complaint ¶ 10. Based on this paragraph, Plaintiff has clearly alleged both that the amount in controversy is less than $5,000,000 and that he waives recovery beyond $5,000,000 in the event that he is incorrect regarding the amount actually in controversy.

The Lowdermilk decision analyzed nearly identical language in determining that the legal certainty standard applied. In Lowdermilk, the plaintiff pled entitlement to damages "in total, less than five million dollars" and also sought attorneys' fees. Lowdermilk, 479 F.3d at 997. The Lowdermilk court held that the language used by the plaintiff triggered the legal certainty standard. Id. at 998-99.

With regard to Plaintiff's complaint in this case, the language used to plead entitlement to less than $5,000,000 in damages is functionally indistinguishable from that used in the Lowdermilk case. Based on Lowdermilk, all a plaintiff has to do to invoke the heightened standard is make some affirmative claim that he or she is entitled to damages below the jurisdictional threshold. That was done in this case, and Defendant therefore bears the burden of showing that the jurisdictional threshold is met to a legal certainty.

Defendant's argument that Plaintiff pled entitlement to damages below $5,000,000 in bad faith is also unpersuasive. Defendant bases this argument on the fact that the validity of waivers to damages over $5,000,000 in class actions is currently pending before the Supreme Court. The problem with Defendant's argument, however, is that the validity of specifically pleading entitlement to damages less than $5,000,000 is not being reviewed, and Lowdermilk is still valid. Defendant's bad faith argument may apply to the CAFA waiver, but Defendant has not produced authority to support applying its argument to the allegation that the amount in controversy is below $5,000,000.[2] Accordingly, the Court declines to find the mere inclusion of a CAFA waiver in a complaint constitutes bad faith with regard to a

[2] Defendant's argument that 28 U.S.C. § 1446(c)(2)(A) requires a preponderance standard is unpersuasive because that statute refers only to removals under 28 U.S.C. § 1332(a), not CAFA. See Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 684 (9th Cir. 2006) ("Given the care taken in CAFA to reverse certain established principles but not others, the usual presumption that Congress legislates against an understanding of pertinent legal principles has particular force.").

separate amount in controversy allegation.

Based on the foregoing, Defendant must show enough "concrete evidence . . . to estimate" the actual amount in controversy, and that the amount is over $5,000,000. In Defendant's notice of removal, Defendant argues that Plaintiff's claims place the following amounts in controversy:

| | |
|---|---|
| Overtime Claims | $3,060,408.00 |
| Waiting Time Penalties | $290,757.60 |
| Meal and Rest Period Compensation Claims | $4,079,836.80 |
| Wage Statement Violation Claims | $836,000.00 |
| Total: | $8,267,001.80 |

If Defendant's amount in controversy is supported by sufficient evidence, it exceeds $5,000,000 and this Court has jurisdiction.

i. Class Size

Defendant argues that the class in this litigation contains at least 209 individuals. Defendant relies on the declaration of Jo Anne Barron to support its contention. Barron Decl. (Doc. #1-3). Ms. Barron testified that she is a human resources generalist for Defendant, and that she has access to the employee records of Defendant. Id. ¶ 1. Based on her review of Defendant's records, Ms. Barron determined that 209 individuals worked in Defendant's Northern California district during the relevant time period, with an average of 102 actively employed at any given time. Id. ¶ 3. Ms. Barron also testified that 63 of those 209 individuals are no longer employed with Defendant. Id. ¶ 5. Finally, Ms. Barron testified that the average salary of

the 209 employees is in excess of $40,000. Id. ¶ 7.

Plaintiff disputes Defendant's estimated class size, claiming that the class used by Defendant is over-inclusive. Plaintiff argues that he only intends to represent RSMs who worked for Defendant at retail locations within California's Central Valley. To show a smaller estimated class size, Plaintiff accessed Defendant's website to list store locations within 50 miles of Sacramento, CA and Fresno, CA. Korvilas Decl. (Doc. #8-3), Exs. D-E.

Plaintiff's complaint seeks to represent a class defined as:

> All Retail Sales Managers ("RSM") in AT&T's district encompassing the Central Valley of California who work(ed) for AT&T Mobility Services LLC at any time within four years prior to the initiation of this action until the present.

Complaint ¶ 12.

Importantly, the definition used in the complaint relies on Defendant's definition of the district encompassing the Central Valley, but the definition does not limit the class to those RSMs who worked in the geographical area known as the Central Valley of California. Plaintiff argues that Defendant is attempting to expand the geographic region beyond his intent, arguing that his use of a lower case "d" in the word district indicates that he "intended to refer to the smallest geographic subdivision of AT&T including the Central Valley area." Reply (Doc. #17) 8. The Court is not persuaded by Plaintiff's rebuttal. The definition used in the complaint relies on the district established by Defendant that encompasses the Central Valley. Ms. Barron

testified that the corresponding district is Defendant's Northern California district. Plaintiff's reliance on Defendant's website is also under-inclusive because it focuses only on the immediate areas around Fresno and Sacramento, not the Central Valley as a whole. Since the district referenced in the complaint encompasses the entire Central Valley, and by implication, at least some areas outside of the Central Valley, focusing only on the Fresno and Sacramento regions fails to consider at least some RSMs who should be included in the class. Accordingly, the unrebutted evidence before the Court shows to a legal certainty that the relevant district is the Northern California district defined by Ms. Barron, and the relevant class size is approximately 209 RSMs.

ii. Evidence Supporting Amount in Controversy

Defendant bases its estimates of the amount in controversy on 1) the declaration submitted by Ms. Barron, 2) declarations submitted by RSMs in other litigation brought by Plaintiff's counsel, and 3) the allegations in the complaint itself.

The gist of the legal certainty standard is that the proponent of federal jurisdiction in a CAFA case must produce some evidence that permits a court to estimate the amount in controversy. Thus, when a Plaintiff specifically pleads that the amount in controversy is less than $5,000,000, a removing Defendant cannot rely solely on the allegations in the complaint. Bonnel v. Best Buy Stores, L.P., No. C-12-2285 EMC, 2012 WL 3195081, *5, — F. Supp. 2d — (N.D. Cal. Aug. 7, 2012). The allegations in the Complaint are still relevant because they indicate what relief the plaintiff is seeking, and therefore

provide a basis for estimating the amount in controversy when coupled with additional evidence submitted in support of removal. Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).

Plaintiff does not dispute that the RSM declarations are accurate, but he does dispute their relevance. Plaintiff points out that two of the three declarants live outside of the Central Valley and that their experiences are not germane to this lawsuit. First, for the reasons discussed with regard to class size, the declarant who worked for Defendant in Susanville, CA is likely a member of the putative class because her city is in Northern California. Second, the declaration from the RSM who worked in Capitola, CA and Monterey, CA is relevant because Capitola is in Northern California and the RSM's experience in Monterey is at least probative of Defendant's overall corporate policies, which are at issue here. In any event, the experiences of the third declarant who worked in Fresno, CA and Clovis, CA are undisputedly relevant and unrebutted by Plaintiff with regard to the number of hours worked by RSMs pursuant to Defendant's alleged policies.

With regard to the Court's jurisdiction under CAFA in this case, the question then becomes whether or not Ms. Barron's declaration combined with the allegations in the complaint and the declarations of the RSMs submitted in support of removal permit the Court to estimate an amount in controversy that exceeds $5,000,000. The Court notes that the following analysis is not intended to comment on the merits of Plaintiff's claims. The Court is required to assume only for jurisdictional purposes

the truth of Plaintiff's allegations that Defendant improperly misclassified RSMs as exempt from wage and hour regulations, but the opposite may be proven by Defendant as the case proceeds.

iii. Overtime Claims

In support of removal, Defendant estimates that each class member seeks, at a minimum, one hour of overtime per day for five days per week. Defendant then calculates a total amount of $3,060,408.00 based on an average of 102 RSMs employed at any given time multiplied by an hourly overtime rate of $28.85.[3] Plaintiff responds to Defendant's calculation by arguing that it is improper under the legal certainty standard to assume one hour of uncompensated overtime per day and five workdays per week. Plaintiff points to Lopez v. Source Interlink Cos., Inc., No. 2:12-CV-00003-JAM-CKD, 2012 WL 1131543, at *4, Slip Copy (E.D. Cal. Mar. 29, 2012), a case remanded by this Court partially on the finding that there was no evidence to support the defendant's assumption that workers worked one hour of uncompensated overtime and missed one meal break per week. Plaintiff also argues that in order to meet the legal certainty standard, Defendant must produce a damages analysis with respect to each class member.

The legal certainty standard does not require individualized damages analyses with respect to each class member. All that the legal certainty standard requires is the production of concrete

[3] The calculation is: ($28.85/hour)*(5 hours/week)*(4 years in the statutory period * 52 weeks/year)*(102 RSMs) = $3,060,408. Defendant derived a $28.85 hourly wage by dividing the average $40,000 RSM salary established by Ms. Barron by 52 weeks/year and by 40 hours/week to arrive at an hourly salary of $19.23. Overtime is paid at 1.5 times the regular rate, so the overtime rate is $28.85/hour.

evidence from which a court can estimate the amount in controversy. Lowdermilk, 479 F.3d at 1000. Plaintiff's reliance on Lopez is also misplaced. In Lopez, the Court declined to include damages based on the removing defendant's assumptions without supporting evidence. Lopez, 2012 WL 1131543, at *4. Here, Defendant produced three declarations from RSMs indicating that they regularly worked far more than five uncompensated overtime hours per week. This evidence accords with Plaintiff's allegations that Defendant "required PLAINTIFF and members of the PLAINTIFF CLASS to work more than eight(8) hours per day, twelve (12) hours per day, and/or forty (40) hours per week." Compl. ¶ 22. A calculation based on only five overtime hours per week when Plaintiff's allegations and the RSM declarations support a much higher sum is reasonable and satisfies the legal certainty standard. Accordingly, Defendant has met its burden on the overtime claims and shown that Plaintiff has placed $3,060,408.00 in controversy.

iv. Waiting Time Penalties

Defendant calculates that $290,757.60 is placed in controversy by Plaintiff's waiting time penalties claims based on Ms. Barron's testimony that 63 putative class members no longer work for Defendant and were thus, according to Plaintiff's allegations, not paid their final wages within the statutorily mandated period.[4] Plaintiff again challenges the sufficiency of the evidence.

Plaintiff alleges that class members no longer employed by

---

[4] The calculation is: $19.23 * 8 hours in a standard work day * 30 days * 63 eligible putative class members = $290,757.60.

Defendant are entitled to waiting time penalties pursuant to Cal. Labor Code §§ 201-203. Under those statutes, a terminated employee is entitled to immediate payment of all wages due upon termination. An employee that quits is entitled to all wages due within 72 hours. For each day that the employee waits for final wages, he or she is entitled to penalties in the amount of one normal day's salary up to 30 days. Defendant has identified 63 employees that no longer work for Defendant as of November 2, 2012 when Ms. Barron's declaration was filed. Plaintiff's allegation is that each terminated employee is entitled to waiting time penalties for unpaid overtime wages, which Plaintiff alleges were systematically never paid during the period applicable to this lawsuit, including all terminated employees up to the present. Ms. Barron's declaration was filed more than 33 days ago, so based on her testimony and Plaintiff's allegations, it is certain that each of the 63 employees would be entitled to the maximum waiting time penalty if Plaintiff's suit is successful. Defendant has therefore shown to a legal certainty that the waiting time penalty claims place $290,757.60 in controversy.

v. Meal and Rest Break Claims

To estimate the amount in controversy for Plaintiff's meal and rest break claims, Defendant assumes that each of the 102 class members employed at any given time during the relevant period missed one meal break and one rest break per shift. Defendant bases its assumption on Plaintiff's allegations, which indicate that Defendant failed to provide meal periods during shifts greater than five hours and rest breaks for shifts over

four hours. Compl. ¶¶ 32-33. According to Cal. Labor Code § 226.7(b), an employee is entitled to an extra hour of pay for each shift without sufficient meal breaks and an hour of pay if rest breaks are not provided. Accordingly, Defendant calculated that the aggregate amount in controversy for the meal and rest break claims is $4,079,836.80.[5] Plaintiff challenges this calculation by arguing that Defendant needs to present a damages analysis for each individual employee in order to meet the legal certainty standard.

For the same reasons discussed with regard to the overtime calculation, the Court finds Defendant's calculation of the amount in controversy with regard to the meal and rest break claims to be reasonable. This amount is again based on the allegations in Plaintiff's complaint, the declarations of RSMs produced by Defendant, and Ms. Barron's declaration. The RSM declarations indicate that RSMs routinely worked more than five shifts exceeding five hours per week, and the complaint alleges that they were never provided the proper breaks. Taking the aggregate of these three sources of information, the Court is satisfied that this estimate is based on concrete evidence and therefore satisfies the legal certainty standard.

vi. Wage Statement Violations

Defendant argues that the amount in controversy for the wage statement violation claims is $836,000. Defendant calculates this amount assuming that each of 209 class members are entitled

[5] The calculation is: ($19.23/hour)*(2 extra hours/workday)*(5 workdays/week)*(208 weeks during the four year limitations period)*(102 putative class members employed at any given time) = $4,079,836.80.

to $4,000 in statutory damages, but points out that the amount might be much more if actual damages are proven. This assumption, however, is deficient because there is no evidence in the record as to how long RSMs worked with Defendant and thus how many allegedly deficient wage statements each received. According to Cal. Labor Code § 226(e), each employee is entitled to $50 for the first violation and $100 per employee for each subsequent violation, not to exceed $4,000. It would be improper under the legal certainty standard for the Court to speculate as to how many wage statements each class member received or how often wage statements were issued. Accordingly, Defendant has not shown to a legal certainty an amount in controversy for the Wage Statement Violation claims.

vii. Total Amount in Controversy

Based on the foregoing analysis, the Court finds that Defendant has satisfied the legal certainty standard with respect to the overtime claims and the meal and rest break claims. Thus, Defendant has shown the amount in controversy to be at least $3,060,408.00 plus $4,079,836.80 plus $290,757.60 for a total amount of $7,431,002.40. Defendant also argues that Plaintiff's prayer for other damages and attorneys' fees further increases the amount in controversy. It is unnecessary to further analyze the amount in controversy, however, because the $5,000,000 threshold is already exceeded.

b. Validity of Plaintiff's CAFA Waiver

Finally, Plaintiff argues that since he waives recovery of individual damages in excess of $75,000 and class damages above $5,000,000 in aggregate, the Court lacks jurisdiction under CAFA.

Defendant argues that remand on this basis is improper because the validity of such waivers will be considered by the Supreme Court during its current term. Defendant cites the Supreme Court's grant of certiorari in Standard Fire Ins. Co. v. Knowles to support its argument. 133 S.Ct. 90 (2012). Standard Fire involves the validity of a nearly identical CAFA waiver. The district court in that case held that the waiver was valid, the Eighth Circuit declined to hear an interlocutory appeal on the issue, and the Supreme Court granted certiorari. Knowles v. Standard Fire Ins. Co., No. 4:11-CV-04044, 2011 WL 6013024, Slip Copy (W.D. Ark. Dec. 2, 2011); Knowles v. Standard Fire Ins. Co., No. 11-8030, 2012 WL 3828891 (8th Cir. Jan. 4, 2012). Additionally, the Ninth Circuit recently held in abeyance a petition to appeal the remand of a nearly identical case in the Central District of California. Rodriguez v. AT&T Mobility Services LLC; No. 12-80143, Dckt. # 6 (9th Cir. 2012). Plaintiff argues in his reply that there is no need to stay the case because the case should be remanded based on Defendant's failure to show the requisite amount in controversy.

As discussed previously, the Court finds that Defendant has shown the requisite amount in controversy. Accordingly, the validity of Plaintiff's waiver to any damages exceeding that amount controls federal subject matter jurisdiction. If the waiver is valid, this case must be remanded because CAFA jurisdiction would not exist. If the waiver is invalid, then Defendant has a right to proceed in this forum.

Under the existing law of the Ninth Circuit, CAFA waivers similar to the one made by Plaintiff are probably valid. See

Lowdermilk, 479 F.3d at 999-1000 (indicating that class action plaintiffs have a prerogative to forgo a larger recovery if they wish to remain in state court); see also Rodriguez v. AT&T Mobility Services LLC; No. 2:12-cv-03694-GW-FMO, Dckt. # 30 (C.D. Cal. 2012) (holding that a CAFA waiver in a nearly identical case was valid because, in part, other considerations beyond amount of total recovery may support a representative plaintiff's desire for a state forum). The Eighth and Seventh Circuits unequivocally permit such waivers. Bell v. Hershey Co., 557 F.3d 953, 958 (8th Cir. 2009); Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co., 637 F.3d 827, 831 (7th Cir. 2011). Defendant argues that Plaintiff may lack the authority to waive recovery on behalf of absent putative class members, but the Lowdermilk court considered and dismissed that concern. Lowdermilk, 479 F.3d at 999 n.5 (noting that a representative plaintiff may sue for less than the amount they are entitled to, but doing so may undermine his or her adequacy as class representative). Based on this authority, the Court would order this case remanded because of Plaintiff's waiver of any recovery over $5,000,000. The decision in Standard Fire is likely to change this analysis by clarifying the validity of the CAFA waiver and consequently the Court's jurisdiction in this case. Staying this action will therefore permit the Court to correctly decide the present motion to remand on the basis of Plaintiff's waiver.

Before imposing a stay, a court must examine "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice

measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)).

In this case, a stay pending an outcome in Standard Fire will serve several purposes. First, such a stay will avoid possible inconsistent decisions should the Supreme Court invalidate waivers like Plaintiff's. Second, staying this case will preserve Defendant's right to a federal forum should Standard Fire indicate that this Court does have subject matter jurisdiction over Plaintiff's claims. Conversely, Defendant will suffer some hardship if it is forced to proceed in a state forum and it is later determined that federal jurisdiction existed all along. Finally, the Court notes that the Ninth Circuit recently stayed an appeal made pursuant to 28 U.S.C. § 1453(c)(1) in the Rodriguez case, and it makes little sense for this Court to refuse to stay the action only to have the Ninth Circuit do so when Defendant appeals this Court's order remanding the case to state court. Accordingly, the Court finds that staying this matter pending a decision in Standard Fire will cause little damage to the parties and promote the orderly course of justice. Defendant will also be able to preserve federal jurisdiction in this matter if such jurisdiction exists. Defendant's request to stay this case is therefore granted.

B. Plaintiff's Attorneys' Fees

Plaintiff seeks an award of attorneys' fees pursuant to 28 U.S.C. § 1447(c) based on Defendant's removal of this action from

state court. Defendant responds that attorneys' fees are not appropriate because removal was reasonable in light of the amount in controversy and the pending decision in Standard Fire related to CAFA waivers.

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). The Court finds that Defendant had an objectively reasonable basis for removing the action based on the potential invalidity of Plaintiff's CAFA waiver and its ability to show an amount in controversy over $5,000,000. Accordingly, Plaintiff's fees motion is denied.

C. Defendant's Motion to Dismiss

Defendant conceded in its opposition to the motion to remand that a stay of this case pending the outcome of Standard Fire also applies to its motion to dismiss. The Court agrees. If Standard Fire supports the validity of Plaintiff's CAFA waiver, this Court does not have jurisdiction to pass on Defendant's motion to dismiss. Accordingly, decision on Defendant's motion is stayed pending a decision in Standard Fire.

## III. ORDER

This action, including Defendant's motion to dismiss, is stayed pending a decision in Standard Fire Ins. Co. v. Knowles, 133 S.Ct. 90 (2012). Either party may move the Court to lift the stay within 30 days of a disposition in Standard Fire. At such time, the Court will only consider the validity of Plaintiff's

CAFA waiver, but not the analysis related to the amount in controversy. Plaintiff's Motion for Attorneys' Fees is DENIED.

IT IS SO ORDERED.

Dated: February 26, 2013

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE