1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   PHILLIP SIMS, individually      No.  2:12-CV-2702-JAM-AC
     and on behalf of all others
12   similarly situated,             **ORDER LIFTING STAY; DENYING
                                      MOTION TO REMAND; and GRANTING
13              Plaintiff,            IN PART AND DENYING IN PART
                                      DEFENDANT'S MOTION TO DISMISS.**
14        v.

15   AT&T MOBILITY SERVICES LLC, a
     Delaware limited liability
16   company; and DOES 1 through
     10, inclusive,
17
                Defendants.
18

19        The Court previously considered Plaintiff Phillip Sims'

20   Motion to Remand (Doc. # 8) and stayed this action (Order,

21   February 27, 2013, Doc. # 21) pending the outcome of Standard

22   Fire Ins. Co. v. Knowles, 133 S. Ct. 1345 (2013).  The issue

23   decided by the Supreme Court in Standard Fire bears directly on

24   this Court's subject matter jurisdiction under the Class Action

25   Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  Due to the stay,

26   Defendant's pending Motion to Dismiss Plaintiff's Seventh and

27   Eighth Claims and Request for Punitive Damages (Doc. # 6) was not

28

                              1

1    decided.[1]  On April 3, 2013, the parties filed a stipulation

2    (Doc. # 22) informing the Court that the Standard Fire decision

3    was published and requesting a final order on Plaintiff's Motion

4    to Remand and Defendant's Motion to Dismiss if the action is not

5    remanded.  The stay on this action is accordingly lifted.

6

7                      I.   MOTION TO REMAND

8         As fully discussed in the Court's February 27, 2013 Order,

9    federal subject matter jurisdiction exists over this action if

10   Plaintiff is not permitted to waive recovery beyond CAFA's

11   $5,000,000 jurisdictional threshold on behalf of both himself and

12   absent members of the class he seeks to represent.  Standard Fire

13   unequivocally held that such waivers are ineffective and cannot

14   defeat federal subject matter jurisdiction under CAFA.  133 S.

15   Ct. 1345, 1350-51 (2013) (holding that stipulations purporting to

16   waive recovery of damages over $5,000,000 are to be ignored when

17   determining a CAFA amount in controversy).  Accordingly, in

18   conformity with the holding in Standard Fire and for the reasons

19   given in the Court's February 27, 2013 Order, Plaintiff's motion

20   to remand is denied because this Court has subject matter

21   jurisdiction over this action.

22

23                     II.   MOTION TO DISMISS

24        The substantive claims raised by Plaintiff relate to his

25   former employment with Defendant.  Plaintiff was a Retail Store

26   _____

27   [1] The motions to remand to dismiss were both originally
     calendared for hearing on January 23, 2013, but the matters were
     submitted without oral argument pursuant to Eastern District of

28   California Local Rule 230(g).

                                    2

1  Manager ("RSM") for one of Defendant's retail locations.

2  Plaintiff alleges that his position was unlawfully classified as

3  exempt from state overtime and break period laws.  Plaintiff

4  seeks unpaid wages, overtime compensation, meal and rest break

5  compensation, statutory penalties, and relief under California's

6  Unfair Competition law ("UCL"), Cal. Bus. & Prof. Code § 17200,

7  et seq.

8       In its motion to dismiss, Defendant seeks to dismiss

9  Plaintiff's Seventh and Eighth causes of action along with his

10  request for punitive damages.  The Seventh cause of action is in

11  tort for conversion of Plaintiff's earned but unpaid wages.  The

12  Eighth Cause of Action is for violation of the UCL.

13       A.   Legal Standard

14       A party may move to dismiss an action for failure to state a

15  claim upon which relief can be granted pursuant to Federal Rule

16  of Civil Procedure 12(b)(6).  In considering a motion to dismiss,

17  the court must accept the allegations in the complaint as true

18  and draw all reasonable inferences in favor of the plaintiff.

19  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other

20  grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto,

21  405 U.S. 319, 322 (1972).  Assertions that are mere "legal

22  conclusions," however, are not entitled to the assumption of

23  truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

24  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To survive

25  a motion to dismiss, a plaintiff needs to plead "enough facts to

26  state a claim to relief that is plausible on its face."  Twombly,

27  550 U.S. at 570.  Dismissal is appropriate where the plaintiff

28  fails to state a claim supportable by a cognizable legal theory.

3

1  <u>Balistreri v. Pacifica Police Department</u>, 901 F.2d 696, 699 (9th

2  Cir. 1990).

3      Upon granting a motion to dismiss for failure to state a

4  claim, the court has discretion to allow leave to amend the

5  complaint pursuant to Federal Rule of Civil Procedure 15(a).

6  "Dismissal with prejudice and without leave to amend is not

7  appropriate unless it is clear . . . that the complaint could not

8  be saved by amendment." <u>Eminence Capital, L.L.C. v. Aspeon,</u>

9  <u>Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003).

10     B.   <u>Discussion</u>

11          1.   <u>Seventh Cause of Action, Conversion</u>

12               (a)  "New-right Exclusive-remedy" Rule

13     Defendant seeks dismissal of Plaintiff's claim for

14  conversion of Plaintiff's allegedly unpaid wages on the theory

15  that violations of the Labor Code are limited to the remedies and

16  penalties contained therein pursuant to California's "new right-

17  exclusive remedy" rule.  Plaintiff disputes Defendant's position

18  and argues that the "new right-exclusive remedy" rule does not

19  apply to the facts of this case.  Plaintiff's allegations related

20  to his conversion claim are limited to unpaid wages, and he does

21  not allege conversion of statutory penalties related to waiting

22  time or meal and rest breaks.

23     The California Supreme Court has recognized as a matter of

24  statutory interpretation that, "[a]s a general rule, where a

25  statute creates a right that did not exist at common law and

26  provides a comprehensive and detailed remedial scheme for its

27  enforcement, the statutory remedy is exclusive." <u>Rojo v. Kliger</u>,

28  52 Cal. 3d 65, 79 (1990).  Conversely, "where a statutory remedy

4

1   is provided for a preexisting common law right, the newer remedy

2   is generally considered to be cumulative, and the older remedy

3   may be pursued at the plaintiff's election." Id.  The first step

4   in analyzing whether the "new right-exclusive remedy" rule

5   applies is therefore to determine whether the statute at issue

6   created a right not available under the common law.

7        Defendant relies on a series of federal district court cases

8   that apply the "new right-exclusive remedy" rule and find that

9   the California Labor Code preempts conversion claims for unpaid

10  wages.  The first decision in this line of cases, Green v. Party

11  City Corp., No. CV-01-09681 CAS (EX), 2002 WL 553219 (C.D. Cal.

12  Apr. 9, 2002), involved a motion for judgment on the pleadings.

13  Id. at *3.  The Green court held that an employee's right to

14  overtime is a right created by statute and additional causes of

15  action are therefore barred by the comprehensive remedial scheme

16  in the Labor Code.  Id. at *5.  A subsequent Central District

17  case applied Green's reasoning to recovery of meal and rest break

18  penalties under California Labor Code § 226.7.  Pulido v. Coca-

19  Cola Enters., Inc., No. EDCV06-406VAP(OPX), 2006 WL 1699328, at

20  *1 (C.D. Cal. May 25, 2006).  A Northern District case then

21  relied on Green and Pulido to hold that the "new right-exclusive

22  remedy" rule barred a conversion claim for unpaid overtime wages

23  because the Labor Code created the right to overtime and also

24  provided the exclusive remedies for failure to pay wages.  In re

25  Wal-Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609

26  (N.D. Cal. 2007).

27        Defendant also relies on two decisions from the Eastern

28  District that support its position.  The first, Vasquez v. Coast

5

1   Valley Roofing Inc., No. CV-F-07-227-OWW-DLB, 2007 WL 1660972

2   (E.D. Cal. June 6, 2007), did not apply the "new right-exclusive

3   remedy" rule.  That case relied on an absence of California

4   authority permitting a conversion claim for unpaid overtime,

5   authority from other states, and the comprehensive remedial

6   scheme in the Labor Code to determine that the Labor Code

7   provided the exclusive remedy for non-payment of overtime wages.

8   Id. at *10.  The final case cited by Defendant, Jacobs v.

9   Genesco, Inc., No. CIV. S-08-1666 FCD DAD, 2008 WL 7836412 (E.D.

10  Cal. Sept. 3, 2008), relied on Green, Pulido, Wal-Mart, and

11  Vasquez in holding that the "new right-exclusive remedy" rule

12  applied to bar a conversion claim for unpaid wages.  Id. at *3.

13  While these cases may be considered for their persuasive value,

14  they are nonbinding authority.

15      When a federal district court interprets state law, it is

16  bound by the decisions of the highest state court.  Vernon v.

17  City of L.A., 27 F.3d 1385, 1391 (9th Cir. 1994) (citing Hewitt

18  v. Joyner, 940 F.2d 1561, 1565 (9th Cir. 1991)).  "Where the

19  state supreme court has not spoken on an issue presented to a

20  federal court, the federal court must determine what result the

21  state supreme court would reach based on state appellate court

22  opinions, statutes, and treatises."  Id.  The California Supreme

23  Court has not directly addressed the application of the "new

24  right-exclusive remedy" rule to common law claims for unpaid

25  minimum and overtime wages.  This Court must therefore determine

26  what result the California Supreme Court would reach on this

27  issue.

28

6

1    The California Supreme Court, in a case not involving the

2  "new right-exclusive remedy" rule, determined that the Labor Code

3  does not provide the exclusive remedies for unpaid wages.  Cortez

4  v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163 (2000).

5  In Cortez, the Supreme Court held that an employee could bring a

6  California Business and Professions Code § 17203 claim for the

7  restitution of unpaid wages.  Id. at 178 ("We are satisfied . . .

8  that an order that a business pay to an employee wages unlawfully

9  withheld is consistent with the legislative intent . . . in

10 section 17203 . . . .").  The "new right-exclusive remedy" rule

11 is one of statutory interpretation by which courts determine the

12 legislature's intent.  Based on Cortez, the California Supreme

13 Court has already conclusively determined that the legislature

14 did not intend to limit actions for unpaid wages to the remedies

15 and penalties contained in the Labor Code.  Applying the "new

16 right-exclusive remedy" to limit a plaintiff's causes of action

17 to those contained in the Labor Code would impermissibly conflict

18 with Cortez because Cortez authorized a separate cause of action

19 and remedy not found in the Labor Code to recover unpaid wages.

20    The Green decision considered Cortez and found that the case

21 did not authorize a claim for conversion of unpaid wages.  2002

22 WL 553219, at *4.  A close reading of that decision, however,

23 shows that the court did not consider the possibility that the

24 holding in Cortez shows that the remedies in the Labor Code are

25 not the exclusive remedy for unpaid wages.  Id.  The court

26 acknowledged that under Cortez a § 17200 claim was permissible

27 and independent of the remedies in the Labor Code, but the court

28 also held that a conversion claim for unpaid wages was not

7

1   permitted only because "Plaintiff fails to cite, and this Court

2   was unable to find, a case in which a statutorily-based claim for

3   nonpayment of wages has been the subject of a conversion claim."

4   Id.  The Green court concluded, considering the facts of that

5   particular case coupled with a lack of authority expressly

6   authorizing an action for conversion, that the plaintiff's claims

7   were limited to those authorized by the Labor Code.  Id. at *5.

8   If the holding in Green is read to apply the "new right-exclusive

9   remedy" rule to actions for unpaid wages, it is difficult if not

10  impossible to reconcile it with the binding precedent in Cortez.

11       Moreover, the portion of the holding in Green that was based

12  on application of the "new right-exclusive remedy" rule is not

13  persuasive.  The Green court never reached the question of

14  whether or not a right to recover overtime pay and unpaid wages

15  existed at common law because the parties did not dispute that

16  issue.  Id. at *4.  Green's holding only presumed that such

17  rights did not exist at common law; but if such rights did exist

18  at common law, the "new right-exclusive remedy" rule cannot apply

19  to actions for unpaid wages because such recoveries would not

20  constitute a new right.  Pulido similarly only addressed

21  penalties related to meal and rest break periods, which the

22  parties in that case agreed were rights created by the Labor

23  Code.  No. EDCV06-406VAP(OPX), 2006 WL 1699328, at *1 (C.D. Cal.

24  May 25, 2006).  Wal-Mart assumed without analysis, citing Green

25  and Pulido, that the rights contained in the Labor Code did not

26  exist at common law.  505 F. Supp. 2d 609, 618-19 (N.D. Cal.

27  2007).  As explained in Rojo, however, the first and necessary

28  step in the "new right-exclusive remedy" rule is determining

8

1  whether or not the right existed at common law.  52 Cal. 3d 65,

2  79 (1990).

3       California established the Industrial Welfare Commission

4  ("IWC"), the entity charged with determining and enforcing a

5  minimum wage, by statute in 1913.  <u>Martinez v. Combs</u>, 49 Cal.4th

6  35, 50 (2010).  The first minimum wage of $0.16 per hour was

7  established in 1916.[2]  Also in 1913, the California legislature

8  enacted a statute enabling any employee to recover wages due

9  under the minimum wage and overtime laws.  <u>Martinez</u>, 49 Cal.4th

10  at 50 (citing Cal. Lab. Code § 1194).  Prior to 1913, actions

11  existed to recover unpaid wages and overtime wages at common law.

12  Under the common law, an employee could recover unpaid wages

13  through an action in contract or, if the contract was legally

14  void, in quantum meruit for the value of services rendered.

15  <u>Brown v. Crown Gold Milling Co.</u>, 150 Cal. 376, 383-84 (1907)

16  (discussing actions for breach of an employment contract and

17  actions in quantum meruit for recovery of the value of services

18  rendered in employment).  Where an employee performed work

19  outside of the normal scope of the employment agreement, the

20  employee could recover in quantum meruit the value of that work

21  in addition to his regular salary.  <u>Id.</u> at 389.  As recently as

22  1977, a California appellate court approved a common law cause of

23  action for the recovery of wages for mandatory trainings attended

24  outside of normal working hours, or in other words, a common law

25  cause of action to recover overtime pay.  <u>Wilson v. Cnty. of</u>

26

27  [2] History of California Minimum Wage,
    http://www.dir.ca.gov/iwc/MinimumWageHistory.htm (last visited
28  Apr. 22, 2013).

1   Santa Clara, 68 Cal. App. 3d 78, 86 (1977) (holding that the

2   federal Fair Labor Standards Act regulating minimum and overtime

3   wages was, in part, a codification of wage rights existing at

4   common law).

5        One California appellate court has addressed the application

6   of the "new right-exclusive remedy" rule to claims for unpaid

7   wages.  In Brewer v. Premier Golf Properties, the court addressed

8   the availability of punitive damages that were predicated solely

9   on violations of the Labor Code's wage and hour provisions.  168

10  Cal. App. 4th 1243 (2008).  In resolving that question, the court

11  held that the Labor Code sections regulating pay stubs, the

12  minimum wage, and meal and rest breaks created new rights and

13  that the remedies also provided for in the Labor Code constituted

14  the exclusive remedies for violations of those rights under the

15  "new right-exclusive remedy" rule.  Id. at 1252-54.  In Brewer,

16  like in Green, the parties agreed that the Labor Code created new

17  rights, so the court did not discuss the history of common law

18  actions to recover unpaid wages.  Brewer only analyzed the

19  comprehensive nature of the remedies in the Labor Code.  Id. at

20  1252.  Brewer is therefore not persuasive because a right must be

21  a purely statutory creation before a statutory remedy is

22  considered exclusive.  If a right existed at common law, a

23  statutory remedy is generally cumulative, even if the remedy is

24  comprehensive.  Rojo v. Kliger, 52 Cal. 3d 65, 79-80 (1990)

25  (holding that despite the comprehensive statutory scheme in the

26  Fair Employment and Housing Act, the statute did not preempt

27  common law tort actions for discrimination).

28

1    The foregoing authority demonstrates that employees were

2    entitled to recover unpaid wages and overtime compensation at

3    common law.  The case law cited by Defendant is not persuasive or

4    controlling because it does not acknowledge the availability of

5    actions to recover wages at common law, skipping the first step

6    of the "new right-exclusive remedy" analysis.  The Labor Code did

7    establish minimum wages for regular compensation and overtime

8    compensation, but under the common law, an employee was entitled

9    to recover a reasonable amount for labor performed in quantum

10   meruit or in an action for breach of contract.  Brown, 150 Cal.

11   at 383-84.  The Labor Code's minimum wage and overtime provisions

12   simply defined what that reasonable amount was, but they did not

13   create the underlying right of an employee to be paid at a fair

14   rate for his labor or the right of that employee to sue for

15   reasonable compensation if he was not.  Additionally, Defendant

16   cites no language in the Labor Code itself that preempts common

17   law causes of action.[3]  It is therefore the opinion of this Court

18   that if the question were presented to the California Supreme

19   Court, it would find that any cause of action in the Labor Code

20   to recover unpaid wages is cumulative with those that exist at

21   common law.  See Rojo, 52 Cal. 4th at 79 (explaining that a

22   statutory remedy for a right existing at common law is cumulative

23   with existing remedies).

24

25   [3] Plaintiff, on the other hand, argues that California Labor Code

26   §§ 558 and 1197.1(h) shows the legislature's express intent to
     allow causes of action not contained within the Labor Code.

27   Based on the Court's finding that the Labor Code is not the
     exclusive remedy for unpaid wage claims, the Court does not reach

28   Plaintiff's argument regarding these sections.

1                 (b)   Conversion Claim for Unpaid Wages

2                       i.   Availability of Action for Conversion of

3                            Unpaid Wages

4     After finding that the "new right-exclusive remedy" rule

5 does not preempt common law causes of action to recover unpaid

6 wages, the Court must address whether or not a conversion claim

7 for unpaid wages is viable as a matter of California law.

8     Conversion is "the wrongful exercise of dominion over the

9 property of another." Oakdale Vill. Grp. v. Fong, 43 Cal. App.

10 4th 539, 543 (1996).  To state a claim for conversion, a

11 plaintiff must allege that (1) he had ownership or rights to

12 possess the property at issue at the time of the conversion; (2)

13 the defendant converted the property by wrongful act; and (3) the

14 plaintiff suffered damages as a result.  Id. at 543-44.  "Money

15 cannot be the subject of a cause of action for conversion unless

16 there is a specific, identifiable sum involved[.]"  PCO, Inc. v.

17 Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP,

18 150 Cal. App. 4th 384, 395 (2007).  While a specific sum must be

19 capable of identification, the law does not require a plaintiff

20 to identify the physical coins or notes allegedly converted.

21 Haigler v. Donnelly, 18 Cal. 2d 674, 681 (1941).  California

22 courts generally permit actions for conversion where a readily

23 ascertainable sum has been misappropriated, commingled, or

24 misdirected.  PCO, 150 Cal. App. 4th at 396.

25     Neither party cites a case that expressly approves a

26 conversion claim to recover unpaid wages.  One California case

27 found by the Court involved an action by the California

28 Department of Labor Standards Enforcement ("DLSE") to recover

unpaid wages pursuant to a settlement agreement.  Dep't of Indus.

Relations v. UI Video Stores, Inc. ("Blockbuster"), 55 Cal. App.

4th 1084.  The DLSE sued Blockbuster on behalf of employees to

recover wages deducted to pay for uniforms in violation of

California law.  Id. at 459.  The parties settled the suit and

Blockbuster agreed to send checks in the amount of $38.51 to each

of 1,914 employees.  Id.  A significant portion of the checks was

returned as undeliverable, and DLSE demanded the returned checks

in order to deposit them in California's unpaid wage fund.  Id.

Blockbuster eventually turned over the checks, but ordered its

bank not to honor them.  Id.  DLSE sued Blockbuster alleging

breach of the settlement agreement and conversion of the wages.

Id.  The court approved DLSE's action for conversion finding

first that the checks constituted wages, which DLSE was

authorized by statute to collect on behalf of employees, and

second that DLSE could maintain its conversion cause of action as

the statutory trustee standing in the shoes of the absent

employees.  Id. at 460-61, 464.

    Vasquez, a case cited by Defendants and also discussed in

the preceding section, found that the holding in Blockbuster did

not approve a conversion claim for unpaid wages.  The Vasquez

court reasoned, "The conversion occurred because Blockbuster

failed to turn over to the DLSE the undeliverable checks as

required by the Settlement Agreement, instead using those funds

for Blockbuster's own use."  Vasquez v. Coast Valley Roofing

Inc., No. CV-F-07-227-OWW-DLB, 2007 WL 1660972, at *5 (E.D. Cal.

June 6, 2007).  The Vasquez court found that the DLSE was acting

to enforce a settlement agreement in Blockbuster, not recover

1    unpaid wages.  Contrary to Vasquez's description, Blockbuster

2    clearly determined that the checks constituted unpaid wages.  55

3    Cal. App. 4th at 1091-92.  Further, the Blockbuster court's

4    holding was explicitly based on DLSE's status as the trustee of

5    unpaid wages for absent employees pursuant to Labor Code § 96.7.

6    Id. at 1092-93.  The Blockbuster court's approval of a claim for

7    conversion of unpaid wages was not based on violation of the

8    settlement agreement; it was based on the checks' status as

9    unpaid wages and DLSE's authority to act on behalf of employees

10   to recover them.

11       In Cortez, also discussed in the preceding section, the

12   California Supreme Court analyzed the legal status of unpaid

13   wages in the context of a claim brought under California's Unfair

14   Competition Law ("UCL").  23 Cal. 4th 163 (2000).  The court held

15   that wages, once earned, become the property of the employee.

16   Id. at 168.  The Cortez decision relied on the doctrine of

17   equitable conversion under which the law considers "that which

18   ought to have been done as done."  Id. at 178 (citing Cal. Civ.

19   Code § 3529 and Parr-Richmond Indus. Corp. v. Boyd, 43 Cal. 2d

20   157, 165 (1954)).  The sole remedy available under § 17200 is

21   restitution of lost money or property, but the court found that

22   employees possess equitable title in their earned but unpaid

23   wages because the employer had a legal obligation to pay them.

24   Id.  Cortez therefore held that unpaid wages could be awarded as

25   restitution for wrongfully acquired money or property under the

26   UCL, even though the UCL does not authorize compensatory damages

27   and the employees never had physical possession of their lost

28   property, i.e., their unpaid wages.  Id.  This aspect of the

                                  14

1  <u>Cortez</u> holding is instructive first because it shows that

2  employees are deemed to possess their wages when they earn them,

3  and second that recovery of unpaid wages is not limited to

4  remedies sounding in contract or the Labor Code.  See <u>Watson</u>

5  <u>Labs., Inc. v. Rhone-Poulenc Rorer, Inc.</u>, 178 F. Supp. 2d 1099,

6  1125 (C.D. Cal. 2001) (explaining that a breach of contract alone

7  does not form the predicate for a § 17200 claim).

8       Plaintiff also cites <u>Lu v. Hawaiian Gardens Casino, Inc.</u> to

9  support his position that conversion claims are available to

10 recover unpaid wages. 50 Cal. 4th 592 (2010).  In <u>Lu</u>, the

11 California Supreme Court addressed the narrow issue of the

12 availability of a private right of action to recover gratuities

13 improperly withheld by an employer under California Labor Code

14 § 351.  Section 351 prohibits an employer from withholding

15 gratuities and establishes that each gratuity is "the sole

16 property of the employee or employees to whom it was paid, given,

17 or left for."  Cal. Lab. Code § 351.  The court determined that

18 no private right of action existed under the statute, but it also

19 made it clear that employees could recover gratuities through

20 other means, such as an action for conversion.  <u>Lu</u>, 50 Cal. 4th

21 at 603-04.  Based on the holding in <u>Cortez</u>, it logically follows

22 that employees hold legal title to their earned but unpaid wages

23 in a manner that is indistinguishable from the legal title to

24 their gratuities created by Labor Code § 351.  The holdings in <u>Lu</u>

25 and <u>Cortez</u> therefore support Plaintiff's position that his

26 conversion claim for unpaid wages is legally viable.  It should

27 also be noted that the <u>Green</u>, <u>Pulido</u>, <u>Wal-Mart</u>, and <u>Vasquez</u> cases

28

15

1   were all decided prior to Lu, and were therefore unable to

2   consider the California Supreme Court's reasoning in that case.

3       Based on the foregoing, there is clear authority under

4   California law that employees have a vested property interest in

5   the wages that they earn, failure to pay them is a legal wrong

6   that interferes with the employee's title in the wages, and an

7   action for conversion can therefore be brought to recover unpaid

8   wages.  The Blockbuster decision alone is sufficient authority to

9   find that a cause of action for conversion of unpaid wages is

10  viable.  Additionally relying on the holdings in Lu and Cortez,

11  which establish the exact legal nature of earned but unpaid wages

12  under California law, this Court finds that if the issue were

13  presented to the California Supreme Court, it would approve a

14  conversion action for unpaid wages just as it indicated such an

15  action is available for converted gratuities.

16                    ii.  Specific Sum Converted

17      Defendant argues that even if the Labor Code does not

18  preempt Plaintiff's conversion claim, the claim is inadequately

19  pled in this instance because Plaintiff does not identify a

20  specific sum converted by Defendant.  Plaintiff responds that the

21  sum converted is easily determined based on hourly rates and the

22  number of hours worked.  Plaintiff also argues that under

23  California law, the employer is responsible for keeping wage

24  records, making any uncertainty attributable to Defendant.

25      The problem with Plaintiff's position is that there is no

26  indication in the complaint that the wages sought constitute an

27  identifiable sum or how such a sum can be readily ascertained.

28  An allegation to that effect is a necessary element of a properly

1  pled conversion claim.  _PCO, Inc. v. Christensen, Miller, Fink,_

2  _Jacobs, Glaser, Weil & Shapiro, LLP_, 150 Cal. App. 4th 384, 395-

3  96 (2007).  Plaintiff's conversion claim is therefore improperly

4  pled.  Since Plaintiff may be able to cure this defect through

5  amendment, Plaintiff is granted leave to amend the complaint.

6           2.   Eighth Cause of Action, Cal. Bus. & Prof. Code
                 § 17200
7

8       Defendant seeks dismissal of Plaintiff's eighth cause of

9  action brought to recover unpaid wages under California Business

10  and Professions Code § 17200.  Defendant contends that the claim

11  is improper because Plaintiff did not allege a quantifiable sum.

12  Plaintiff responds that under _Cortez_ the claim is permissible and

13  adequately pled.

14       Defendant cites _Korea Supply Co. v. Lockheed Martin Corp._,

15  29 Cal. 4th 1134, 1150 (2003), and _Cortez_ to support its

16  argument.  Both of those cases indicate that a § 17200 claim can

17  be brought to recover unpaid wages.  _Korea Supply_ specifically

18  distinguishes its holding from _Cortez_, stating, "Unlike _Cortez_,

19  then, the monetary relief requested by [Korea Supply Co.] does

20  not represent a quantifiable sum owed by defendants to

21  plaintiff."  _Id._ (emphasis added).  As discussed above, _Cortez_

22  authorizes a § 17200 claim for unpaid wages, a point that

23  Defendant seems to concede by not rebutting Plaintiff's arguments

24  on this specific claim in its reply.  Defendant's motion to

25  dismiss this claim is accordingly denied.

26           3.   Punitive Damages

27       Defendant argues that Plaintiff's punitive damages claim

28  should be dismissed because it is predicated solely on

                                    17

1  Plaintiff's conversion claim.  Plaintiff does not contest this

2  point in his opposition.  Accordingly, Plaintiff's claim for

3  punitive damages is also dismissed with leave to amend.

4

5                              III. ORDER

6       For the foregoing reasons, Defendant's Motion to Dismiss is

7  granted with respect to Plaintiff's Seventh claim for conversion

8  and his punitive damages claim.  Defendant's motion is denied

9  with respect to plaintiff's Eighth claim for relief.  Plaintiff

10 is given leave to amend his complaint within 20 days of this

11 Order.  Defendant is ordered to file a responsive pleading within

12 either 20 days of any amended complaint or 40 days of this Order,

13 whichever occurs sooner.

14      IT IS SO ORDERED.

15 Dated: July 1, 2013                 _____
                                       JOHN A. MENDEZ,
16                                     UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

                                   18